Eugenia **RODRIGUEZ**, Individually, and as next friend of Alberto Torres, Plaintiff–Appellant,

v.

Roberto **AVITA**, et al., Defendants,

City of Brownsville, Texas, Defendant–Appellee.

No. 88–2091.

United States Court of Appeals, Fifth Circuit.

May 1, 1989.
Rehearing Denied June 6, 1989.

Michael E. Ezell, Harlingen, Tex., for plaintiff-appellant.

James E. Belton, Brownsville, Tex., for defendant-appellee.

Before GEE, HIGGINBOTHAM and DUHE, Circuit Judges.

GEE, Circuit Judge:

This appeal requires us to determine whether a civil rights action against a municipality arising from a shooting by a police officer was properly dismissed pursuant to 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim. The pleading that we must evaluate is not prolix, and we employ its own terms to state its claims:

On or about August 29, 1980, Plaintiff's son, Alberto Torres, became involved in an argument with his cousin, Pablo Covarrubias. Soon after the argument began, the Brownsville Police Department was called and a number of police officers arrived at the scene.

Following the arrival of several officers of the Brownsville Police Department, efforts were being made by said police officers to persuade Alberto Torres to give himself up and to throw down a weapon which he had in his possession. Throughout this incident, Alberto Torres did not put in jeopardy the life of any police officer or other person.

While the negotiations were continuing, Defendant Robert Avita, arrived at the scene, and without first checking with the other officers at the scene, or his immediate supervisor, shot and gravely wounded Alberto Torres in the chest and/or abdomen.

Several of the officers on the scene had the opportunity to apprehend, disarm or subdue Alberto Torres prior to his being shot by Robert Avita. None of these officers did so. Robert Avita had available to him other means of attempting to arrest, subdue or disarm Alberto Torres which he did not utilize. The failure of the Brownsville police officers to properly subdue or arrest Alberto Torres or to control the situation was the result of a grossly inadequate training provided to such officers by the Brownsville Police Department. Had such officers been properly trained, Alberto Torres would not have been shot.

The City of Brownsville is liable to Plaintiffs because the City of Brownsville failed to properly and adequately train its police officers to handle situations such as the situation described herein, and if such officers had been properly trained, Alberto Torres would not have been shot. The training provided to such officers was grossly inadequate and the result of gross negligence on the part of the policy-making officials of the City of Brownsville. In that regard, the Police Chief of the City of Brownsville had complete authority over training of police officers and the police. The City of Brownsville provided no guidance or instruction, in regard to the subject of police training and the police chief was left to develop all policies of the City of Brownsville in regard to this important matter.

The grossly inadequate failure to train the police officers of the City of Brownsville amounts to a policy regulation or decision of the City of Brownsville. The Police Chief of the City of Brownsville is an official to whom policy making authority has been delegated by the City Council through the City Manager. The grossly inadequate training provided to Brownsville police officers had existed for many years prior to the shooting of Alberto Torres and has continued to the present. The same amounts to a custom or practice which represents municipal policy of the City of Brownsville.

The City of Brownsville hired, at all times material before and after the shooting of Alberto Torres, police officers whose only training requirement was that they had attended the police academy which was inavailable [sic] at the time in the Rio Grande Valley. The officers with this limited training were put on the street and expected to handle emergencies of all kinds including dealing with armed suspects and controlling emotional situations in which weapons were exhibited or used. All of the officers involved in the shooting of Alberto Torres had attended the police academy. None had significant additional training in handling situations such as that involved in [sic] Alberto Torres except for daylight firearms training. The training provided by the police academy in han-

dling these types of situations was at all times minimal in regard to the type of situations involved in [sic] Alberto Torres or any other emotionally charged situations in which an armed suspect was involved. At the time of the shooting of Alberto Torres and before there was training available to the Brownsville Police Department which, had the same been provided to the officers involved in the incident complained of, would have resulted [sic] these officers to have properly handled this incident without the shooting of Alberto Torres.

## Analysis

### Pleading Standards

Long before the filing of the pleading quoted above, it had been laid down as the law of our Circuit that in "cases invoking 42 U.S.C. § 1983 [1] we consistently require the claimant to state specific facts, not merely conclusory allegations." *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir.1985), and see authorities from this and other circuits cited at note 20. Cases such as *Elliott*, where the immunity to suit of governmental officials is at stake, present a special and acute subset of the general run. In view of the enormous expense involved today in litigation, however, of the heavy cost of responding to even a baseless legal action, and of Rule 11's new language requiring reasonable inquiry into the facts of the case by an attorney *before* he brings an action, applying the stated rule to all § 1983 actions has much to recommend it. There can be scant imposition, after all, in requiring a pleader who has already inquired into the facts of his case to plead his understanding of them, as our authorities cited have often suggested. We need not go so far in today's case, however, for reasons which we shall shortly explain. Before doing so, however, it is appropriate to consider what sort of claim Mrs. Rodriguez had to state in order to remain in court.

### Municipal Liability

The law with which we must deal has been well-settled in general outline for some time. The Court decided in 1978 that a municipality could not be held vicariously liable in an action under § 1983: that such liability attaches only when the municipality *itself* has acted wrongly. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Where the city is sought to be held liable on the basis of actions by low-level employees such as those of Officer Avita in today's case, these must be shown to have been carried out in obedience to overall municipal custom or policy. *Languirand v. Hayden*, 717 F.2d 220 (5th Cir.1983).

In *Languirand*, we also held, however, that there might be a cause of action against a city under § 1983 for injury resulting from the negligent act of a poorly-trained policeman, where the failure to train resulted from "gross negligence amounting to a conscious indifference" on the part of the municipality. *Id.* at 227. We cautioned, however, that to make such a showing in such a case, there would have to be demonstrated "at least a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or wide-spread throughout the police force." *Ibid.* So holding, we concluded that municipal liability could not, as a matter of law, be derived from a single incident of improvident discharge of a firearm by a police officer, who had been seeking to halt a departing automobile by shooting out a tire and had instead struck a vehicle occupant when the pistol recoiled upwards before his second shot.

Two years after Judge Garwood's careful opinion for our Court in *Languirand* came *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), in which the Supreme Court held to like effect in a fact situation all but identical to that of *Languirand*. Although the Court was unable to agree on every aspect of the opinion's reasoning, seven judges of the Court agreed in general that a single shooting incident by a police officer was insuffi-

1. Such as this.

cient as a matter of law to establish the official policy requisite to municipal liability under § 1983. And, within weeks of today's writing, came *City of Canton v. Harris*, — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), citing *Tuttle* with approval and making plain that training police officers inadequately can only be viewed as city "policy" when it results from a deliberate and conscious indifference to the rights of persons with whom the police come into contact, resulting in an "identified deficiency in the city's training program ... closely related to the ultimate injury" and which "actually caused" the plaintiff's injury. — U.S. at ——, 109 S.Ct. at 1205.

### The Law Applied

Bearing the foregoing statements of the law on municipal § 1983 liability in mind, it is apparent that Mrs. Rodriguez's complaint falls short of pleading such a cause of action against the city.[2] Her counsel candidly and commendably conceded at a hearing in connection with his motion to amend to claim inadequate training as a theory of recovery that his claim was "basically one officer and one situation, one incident" and that as to other incidents he had nothing to add. Thus the claim as pleaded comes down to this:

That while police officers were trying to persuade the plaintiff's teenage son to drop a rifle with which he had armed himself in the course of a dispute with his cousin, another officer arrived on the scene and, without communicating with the other officers, shot the young man. The failure of the officers to subdue the youth by gentler means was the result of inadequate training, which was, in turn, the result of gross negligence on the part of policy-making city officials. The police chief had no guidance about training policies from the city and developed all such policies himself. The grossly inadequate training had existed for many years and amounts to a municipal policy. Graduation from a local police academy was the only training requirement, and training there was "at all times minimal in regard to the type of situations involved in Alberto Torres [sic] or any other emotionally charged situations in which an armed suspect was involved."

Such a pleading does no more than describe a single incident of arguably excessive force applied by one officer—a description decked out with general claims of inadequate training and gross negligence, all concededly stemming from the single incident and nowhere else. It is clear from counsel's quoted colloquy with the trial judge that he has pled his case fully and has nothing to add, that the sole foundation for his general and conclusory allegations of "gross negligence" and "grossly inadequate training" was the pleaded incident itself. Under the rules of *Tuttle* and *Languirand* discussed above, there is no case —not as a matter of pleading, merely, but as one of conceded fact.

Counsel directs us to the dissent of four Justices in *Springfield v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987), but this has been mainly bypassed by *City of Canton*, cited above, insofar as it moots questions of municipal liability for inadequate police training and what standard should govern such liability. In addition, a footnote to the *Kibbe* majority opinion dismissing the writ as improvidently granted notes that on that appeal the Court had been prepared to consider whether the conduct of *several* police officers during a single incident might give rise to the inference of "a policy of inadequate training." 480 U.S. at 258 n. *, 107 S.Ct. at 1115 n. *. It did not do so, however, and we are not freed to depart from our Circuit's rule announced in *Languirand* by such a conditional observation.

The complaint was properly dismissed, and the order of the trial court doing so is AFFIRMED.

---

2. The individual policeman was dismissed earlier as "uninsured and unnecessary."