755 F.Supp. 726 (1991)
Charlene LEATHERMAN, Kenneth Leatherman, as Individuals and Next Friends of Travis Leatherman; Gerald Andert, Kevin Lealos, Jerri Lealos, as Individuals and Next Friends of Shane Lealos; Travor Lealos, Pat Lealos, Donald Andert, Lucy Andert, Plaintiffs,
v.
TARRANT COUNTY NARCOTICS INTELLIGENCE AND COORDINATION UNIT, Tarrant County, Texas, Tim Curry, in His Official Capacity as Director of Tarrant County Narcotics and Coordination Unit, Don Carpenter, City of Lake Worth, Texas, City of Grapevine, Texas, Defendants.
Civ. A. No. 4-89-842-A.
United States District Court, N.D. Texas, Fort Worth Division.
January 22, 1991.
*727 William W. Harris, Bedford, Tex., Don Gladden, Fort Worth, Tex., for plaintiffs.
Van Thompson, Jr., Barrie Howard, Asst. Dist. Atty., Fort Worth, Tex., for Tarrant County Narcotics Intelligence and Coordination Unit.
Rex McEntire, Fort Worth, Tex., for City of Lake Worth Tex.
Paul V. Enriquez, Dallas, Tex., for City of Grapevine, Tex.

MEMORANDUM OPINION AND ORDER
McBRYDE, District Judge.
Came on to be considered (1) the motions of defendants The Tarrant County Narcotics Intelligence and Coordination Unit ("TCNICU"); Tim Curry ("Curry"), in his official capacity as Director of TCNICU; Tarrant County, Texas ("Tarrant"); and Don Carpenter ("Carpenter"), in his official capacity as Sheriff of Tarrant, to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and for summary judgment pursuant to Fed.R. Civ.P. 56, and (2) the motion of defendant City of Grapevine, Texas ("Grapevine") to dismiss pursuant to Rule 12(b)(6). The court has determined that the dismissals sought by such motions should be granted and that the claims against the remaining defendant, City of Lake Worth, Texas, ("Lake Worth") should also be dismissed.

Nature and History of the Litigation
This § 1983[1] action was removed to this court from a state district court. When removed, it was an action by Charlene Leatherman and Kenneth Leatherman, as individuals and next friends of Travis Leatherman, as plaintiffs (the "Leatherman plaintiffs"), against TCNICU and Tarrant, as defendants.
Shortly after the removal occurred, TCNICU and Tarrant filed a motion to dismiss pursuant to Rule 12(b)(6) and a motion for summary judgment pursuant to Rule 56. The court, acting through Judge David O. Belew, Jr., granted the requested dismissal by order signed February 1, 1990. Plaintiffs moved to vacate the dismissal, which the court, acting through Judge Belew, did by order signed March 8, 1990. The order vacating the dismissal directed the Leatherman plaintiffs to amend their complaint within twenty (20) days. Their amended complaint was filed March 23, 1990. Not only did it restate the claims of the Leatherman plaintiffs, but it added new plaintiffs, who asserted causes of action based on a set of facts that was separate and distinct from the set of facts upon which the Leatherman plaintiffs were basing their claims and a new group of defendants.[2] The added plaintiffs were Gerald Andert, Donald Andert, Lucy Andert, Pat *728 Lealos and Kevin and Jerri Lealos, individually and in their capacities as next friends of Shane and Travor Lealos, minors (the "Andert/Lealos plaintiffs"); and, the newly named defendants were Curry, in his official capacity, Carpenter, in his official capacity, Grapevine and Lake Worth.
The motions that are now before the court were filed in response to the allegations of the amended complaint. Lake Worth has answered, but has not moved for dismissal.
The claims of the Leatherman plaintiffs are predicated on things that happened at the time of a putative drug raid on the Leatherman home. Allegations of the amended complaint assert as to the Leathermans that: (1) in May 1989 the Leatherman home was entered and searched by law enforcement officers employed by and under the control of TCNICU, Tarrant and Lake Worth; (2) during the course of the search two dogs belonging to the Leathermans were shot to death; (3) the officers threatened to shoot two of the Leathermans; (4) after the officers realized that none of the items described in the warrant pursuant to which they entered the Leatherman home were present, the officers frolicked in the driveway and yard of the residence; and (5) the conduct of the law enforcement officers deprived the Leathermans of rights they have under the fourth and fourteenth amendments of the United States Constitution.
An earlier, unrelated, putative drug raid gave rise to the claims of the Andert/Lealos plaintiffs. The allegations in reference to those plaintiffs are that: (1) in January 1989 law enforcement officers of Grapevine and TCNICU broke into the Lealos home under authority of a search warrant; (2) one of the officers clubbed Gerald Andert in the head; (3) the officers held the Andert and Lealos family members at gunpoint, causing them to fear for their lives, and forced them to lie face down on the floor, and, in the course of doing so, the officers shouted obscenities and threats at family members who made requests for identification of the intruders; (4) after having discovered from a search of the Lealos residence no items that could form the basis of criminal prosecution, the officers left the premises without an apology; and (5) the conduct of the law enforcement officers deprived the Andert/Lealos plaintiffs of their fourth and fourteenth amendment rights.
None of the law enforcement officers who participated in the activities described in the amended complaint are named as defendants. The sole defendants are TCNICU, Tarrant, Curry, in his official capacity, Carpenter, in his official capacity, Grapevine, and Lake Worth.
Allegations Directed Against Curry and Carpenter:
No allegations are made against Curry or Carpenter in a non-official capacity.
The allegations against Curry are that, at pertinent times, he, as director of TCNICU, was vested with official authority and responsibility for establishing policies for and supervising the day-to-day operations and practices of law enforcement personnel participating in and compromising TCNICU; that TCNICU acted by and through "its official policymaker", Curry, in respect to policies and practices of TCNICU having to do with training of its officers; and, that a custom and policy of TCNICU of which plaintiffs complain was so persistent and widespread that Curry, as the official policymaker of TCNICU, either knew or should have known of its existence.
The allegations against Carpenter are virtually identical to those against Curry except that the complaint against Carpenter is in his capacity as Sheriff of Tarrant, and the allegations against him are in reference to the conduct of Tarrant and are based on his alleged capacity as the "official policymaker" of Tarrant.
No recovery is sought by plaintiffs from Curry or Carpenter.
The Theories of Recovery Alleged Against the Public Entity Defendants:
After alleging acts of allegedly wrongful conduct on the part of the law enforcement officers who engaged in the raids of which plaintiffs complain, plaintiffs seek to impose responsibility on the public entities by *729 boilerplate, conclusionary allegations pertaining, first, as to all public entity defendants, to adequacy of training of the law enforcement officers and, second, as to TCNICU, to an alleged custom and practice to prepare affidavits and cause the issuance and execution of search warrants predicated on no more than the detection of odors associated with illegal drug manufacturing.

The Threshold Reason why Dismissal Should be made as to Curry and Carpenter
In Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the Supreme Court made clear that an action brought under § 1983 against a police official in his official capacity is tantamount to an action against the public entity for which the official is alleged to act. Individual liability of the official cannot flow from a suit against him in his official capacity. A judgment against him in that capacity is the same as a judgment against the public entity he represents, assuming that the public entity has received notice and an opportunity to respond. Brandon, 469 U.S. at 471-72, 105 S.Ct. at 877-78.
Inasmuch as Curry and Carpenter are sued only in their respective official capacities, and the respective entities they are alleged to represent are joined as party defendants, there is no reason why Curry or Carpenter should continue to be defendants in this action. The court is ordering their dismissal. There appear to be other reasons why Curry and Carpenter should be dismissed from the suit, but the court does not need to go beyond this threshold reason.

The Inspirations for Plaintiffs' "Inadequate Training" and "Custom and Practice" Allegations
The inadequate training allegations are inspired by the holding of the Supreme Court in City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiffs allege, in a conclusionary way, the elements of a § 1983 inadequate training cause of action, as defined in City of Canton, against each of the public entity defendants.
Plaintiffs' "custom and practice" allegations related to the obtaining of search warrants on the basis of nothing more than detection of odors associated with illegal drug manufacturing have their genesis in the Supreme Court's Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), opinion. Again, plaintiffs have used in a conclusionary way the words that speak the cause of action defined by the Supreme Court.

Particularity Required in a Pleading that Purports to Assert a § 1983 Action Against a Public Entity
The Fifth Circuit repeatedly has held that district courts should hold plaintiffs in § 1983 actions such as this to a high degree of particularity in their pleadings. See Rodriguez v. Avita, 871 F.2d 552 (5th Cir.1989); Palmer v. City of San Antonio, Texas, 810 F.2d 514 (5th Cir.1987); Elliott v. Perez, 751 F.2d 1472 (5th Cir.1985); and, Morrison v. City of Baton Rouge, 761 F.2d 242 (5th Cir.1985). Elliott explained the policy reasons why "blunderbuss phrasing of the arguable claims in the plaintiffs' complaints" will not suffice, and noted that a lack of pleading particularity "eviscerates important functions and protections of official immunity." 751 F.2d at 1476. In Elliott, the Fifth Circuit stated that:
In the now familiar cases involving 42 U.S.C. § 1983 we consistently require the claimant to state specific facts, not merely conclusory allegations.
Id. at 1479.
While Elliott dealt with an action against public officials, its principles apply with equal force to an action against a public entity. Palmer was such an action. Apropos to the instant case, the Fifth Circuit said in Palmer:
Similarly, an isolated incident is not sufficient to show that a custom exists. As we stated in Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir.1984) (en banc), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985): "Isolated *730 violations are not the persistent, often repeated, constant violations that constitute custom and policy."
....
We have also consistently required a section 1983 plaintiff to state specific facts and not merely conclusory allegations. Elliott v. Perez, 751 F.2d 1472, 1479 & n. 20 (5th Cir.1985) (citing cases). While it might be possible that a basis for municipal liability exists in this case, Palmer states no facts in his complaint to support his assertion that San Antonio authorized and approved the practice of its police officers using excessive force when making arrests or that such a well settled practice of doing so existed. Although Palmer has already amended his complaint once, the complaint still fails to meet the requirements of Elliott. As we have made clear, the assertion of a single incident is not sufficient to show that a policy or custom exists on the part of a municipality. Slidell, 728 F.2d at 768 n. 3. Palmer failed to allege that there are prior incidents which, if taken as true, would reveal the existence of an unconstitutional custom on the part of San Antonio. Accordingly, we affirm the district court's order of dismissal with respect to the city of San Antonio.
810 F.2d at 516-17.
Rodriguez made clear that boilerplate, conclusionary allegations combined with a description of a single incident will not suffice. When speaking in reference to a pleading that was no more generally worded than the one involved in this action, the court had the following to say:
Such a pleading does no more than describe a single incident of arguably excessive force applied by one officer  a description decked out with general claims of inadequate training and gross negligence, all concededly stemming from the single incident and nowhere else. It is clear from counsel's quoted colloquy with the trial judge that he has pled his case fully and has nothing to add, that the sole foundation for his general and conclusory allegations of "gross negligence" and "grossly inadequate training" was the pleaded incident itself. Under the rules of Tuttle and Languirand [v. Hayden, 717 F.2d 220 (5th Cir. 1983)] discussed above, there is no case  not as a matter of pleading, merely, but as one of conceded fact.
871 F.2d at 555.

Plaintiffs' Pleadings do Not Contain the Required Particularization
Though plaintiffs were afforded an opportunity to amend in response to an earlier Rule 12(b)(6) motion to dismiss, and did file such an amendment, plaintiffs' allegations of their theories of municipal entity liability are blunderbuss in character and describe only isolated incidents "decked out with general claims of inadequate training...." and the like. Rodriguez, 871 F.2d at 555.
The inadequate training allegations of the Leatherman plaintiffs is limited, as to each defendant, to (a) claims of failure to formulate and implement an adequate policy to train its officers on the proper manner in which to respond when confronted by family dogs when executing search warrants, and (b) the impermissibly broad allegations that there was a failure "to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed." There is no mention in the complaint of more than one incident of confrontation by officers of a defendant with family dogs. All inadequate training allegations of the Andert/Lealos plaintiffs are boilerplate claims of the "failed to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed" variety. The complaint does not suggest the kind of training that plaintiffs contend should have been, but was not, given; nor, is there any specificity or particularity as to other elements of the inadequate training theory.
Moreover, neither the descriptions contained in the complaint of the searches made of the two residences in question nor related allegations provide in the least the *731 particularization that would be necessary to state factually a deliberate indifference to the Constitutional rights of persons likely to be affected by a failure to train or a failure to formulate and implement an adequate policy to train.
The shortcomings of the allegations of the complaint on the "training" theories, standing alone, provide reason for dismissal of all plaintiffs' claims based on those theories.
The same can be said of the generally stated allegations asserting the theory that TCNICU should be held liable because of an alleged custom and practice of TCNICU and its law enforcement personnel to prepare affidavits and cause the issuance and execution of search warrants predicated on no more than the detection of odors associated with illegal drug manufacturing. No facts are pleaded that would satisfy the multiplicity of incidents requirement. Clearly, the pleading does not present a case of custom and practice under the standards of particularization adopted by the Fifth Circuit. The court turns now to another reason why the pleading must fail as to the "odor" theory.

The Issuance of the Search Warrant Predicated on no More than the Detection of an Odor Associated with Illegal Drug Manufacturing or Trafficking is an Acceptable Practice
In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), law enforcement officers entered and searched defendant's hotel room after they recognized coming from her room a strong odor of burning opium. Incriminating opium and smoking apparatus were found. The Supreme Court held that the search was improper, but in the course of doing so explained:
At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. We cannot sustain defendant's contention, erroneously made, on the strength of Taylor v. United States, 286 U.S. 1 [52 S.Ct. 466, 76 L.Ed. 951 (1932)], that odors cannot be evidence sufficient to constitute probable grounds for any search. That decision held only that odors alone do not authorize a search without warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.
Johnson, 333 U.S. at 13, 68 S.Ct. at 369.
In United States v. Ogden, 572 F.2d 501, 502 (5th Cir.1978), the court said that:
The agent's identification of the odor of marijuana is enough to support probable cause to search. See, e.g., United States v. Villarreal, 5 Cir., 1978, 565 F.2d 932, 937. No warrant is required for the search of an automobile under such circumstances.
And, in United States v. Rivera, 595 F.2d 1095, 1099 (5th Cir.1979), the court noted that "[i]t is well settled that detection of the odor of marijuana furnishes probable cause to search a vehicle."
Thus, a complaint that TCNICU has a custom and practice to prepare affidavits and cause issuance and execution of search warrants predicated on no more than detection of odors associated with illegal drug manufacturing does not state a cause of action. This provides a self-sufficient, independent reason for dismissal of the "odor" theory of recovery.

Viewing the Matter from a Rule 56 Perspective
If the court were to overlook the pleading inadequacies, plaintiffs nevertheless would be unable to clear the hurdle created by the Rule 56 motion.
In McKee v. City of Rockwall, Texas, 877 F.2d 409 (5th Cir.1989), the Fifth Circuit considered an action against a public entity under § 1983 in a summary judgment context. The claim of McKee was based on an alleged policy of the Rockwall police department *732 discouraging arrests in domestic violence cases, which McKee contended discriminated against women. In the course of discussing McKee's summary judgment burden on the issue of whether the police department had a discriminatory policy, the court explained:
McKee must present some evidence of such a policy in order to survive the defendants' summary judgment motion. When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."
Id. at 414-15 (quoting ... Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
While applying City of Canton[3] to a claim of individual liability rather than a claim public entity liability, the Third Circuit in Sample v. Diecks, 885 F.2d 1099 (3rd Cir.1989), provided a helpful discussion of the degree of proof that must be brought to bear by a plaintiff in order to avoid a summary disposition. The court said:
Based on City of Canton, we conclude that a judgment could not properly be entered against Robinson in this case based on supervisory liability absent an identification by Sample of a specific supervisory practice or procedure that Robinson failed to employ and specific findings by the district court that (1) the existing custom and practice without that specific practice or procedure created an unreasonable risk of prison overstays, (2) Robinson was aware that this unreasonable risk existed, (3) Robinson was indifferent to that risk, and (4) Diecks' failure to assure that Sample's complaint received meaningful consideration resulted from Robinson's failure to employ that supervisory practice or procedure....
On remand, the district court should bear in mind that under the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that Sample identify specifically what it is that Robinson failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."
885 F.2d at 1118.
In Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791 (1985), the Supreme Court emphasized the burden of proof in a case where liability is sought to be imposed under Monell[4], saying:
Here the instructions allowed the jury to infer a thoroughly nebulous "policy" of "inadequate training" on the part of the municipal corporation from the single incident described earlier in this opinion, and at the same time sanctioned the inference that the "policy" was the cause of the incident. Such an approach provides a means for circumventing Monell's limitations altogether. Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and *733 the causal connection between the "policy" and the constitutional deprivation. Under the charge upheld by the Court of Appeals the jury could properly have imposed liability on the city based solely upon proof that it employed a nonpolicymaking officer who violated the Constitution. The decision of the Court of Appeals is accordingly reversed.
And, the heavy burden of proof to be borne by plaintiff in a case such as this was again recognized in Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01, 89 L.Ed.2d 452 (1986):
We hold that municipal liability under § 1983 attaches where  and only where  a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. See Tuttle, supra [471 U.S.] at 823, 85 L.Ed.2d 791, 105 S.Ct. 2427 [at 2436] ("`policy' generally implies a course of action consciously chosen from among various alternatives").
The only evidentiary items adduced by plaintiffs in response to the Rule 56 motion are the affidavits of plaintiffs Charlene Leatherman, Travis Leatherman, Gerald Andert, Donald Andert, Kevin Lealos and Jerri Lealos and the report of persons who apparently were hired by the attorneys for the plaintiffs to interview the Andert/Lealos plaintiffs. Those items deal with the facts of the specific incidents about which plaintiffs complain, and damages allegedly flowing to plaintiffs as a consequence of those incidents, but shed no light whatsoever on the factors that are so crucial to establishment of § 1983 liability against a public entity. Plaintiffs simply have not come forward with any evidence to satisfy the summary judgment burden that was cast on them once defendants made their Rule 56 challenge. At most, plaintiffs might have raised issues of impropriety on the part of the individual officers who participated in the raids. Quite clearly, this does not create an issue of liability on the part of the public entity defendants. The Supreme Court emphasized in its Monell v. New York City Department of Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), opinion that a public entity is not liable solely because it employs a tortfeasor:
On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor  or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.
....
We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.
Id. at 691, 694, 98 S.Ct. at 2036, 2037.
Thus, if the potential of dismissal is viewed from a summary judgment standpoint, the same result obtains  plaintiffs' claims should be dismissed.
Even though Grapevine and Lake Worth are not summary judgment movants, the record of this case makes appropriate sua sponte summary rulings by the court in favor of those defendants. The same reasons why summary rulings should be made for TCNICU and Tarrant exist as to the claims by plaintiffs against Grapevine and Lake Worth. Plaintiffs have had ample opportunity to come forward with evidence in support of their claims of public entity liability against all defendants, and have had sufficient notice that they must bring their evidence forward or suffer dismissals. See Catrett v. Johns-Manville Sales Corp., 756 F.2d 181, 189 (Bork, J., dissenting) (D.C.Cir.1985), rev'd sub nom. Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (citing Bork dissent with approval).

Other Grounds of the Defense Motions
The motions of TCNICU, Curry, in his official capacity, Tarrant, and Carpenter, in *734 his official capacity, state grounds for dismissal that are not discussed in this memorandum opinion. The court has not been required to consider any of those other grounds in order to reach the conclusion that all of plaintiffs' claims should be dismissed.

Request of Plaintiffs Pursuant to Rule 56(f)
At pages 24-25 of their reply in opposition to the second motions of TCNICU, et al, to dismiss and for summary judgment, plaintiffs say that the motion for summary judgment should be denied pursuant to Fed.R.Civ.P. 56(f) "for the reason that Plaintiffs, as non-moving parties, have not had a reasonable opportunity to discover information that is essential to their opposition to the Defendants' Motion." The argument made by plaintiffs on this subject, and the supporting affidavit of attorney Gladden, rely on the circumstance that no documents have been produced pursuant to a document production request that was served by plaintiffs on TCNICU and Tarrant in May 1990.
The court is not persuaded by plaintiffs' arguments. This suit was filed in December 1989, and plaintiffs have had ample opportunity to engage in full discovery since then. The document production request to which plaintiffs refer is limited to documents that indicate the results of execution of search warrants, since the formation of TCNICU, that were initiated because of the detection of odors associated with the operation of an illegal drug manufacturing laboratory. Obviously, any inability of plaintiffs to acquire documents bearing on that limited subject provides no excuse for failure of plaintiffs to develop evidence in response to the motion for summary judgment, if any was available to be had. Plaintiffs have known since December 1989, when TCNICU and Tarrant filed their first motion for summary judgment, that there was a need to develop and put in the record whatever summary judgment evidence could be developed in support of plaintiffs' claims.
If plaintiffs' allegations are factually based, plaintiffs' counsel are presumed to have had knowledge of the factual basis when they signed the original and amended complaints. See Fed.R.Civ.P. 11. In Rodriguez v. Avita, 871 F.2d 552, 554 (5th Cir.1989), the court took into account the requirements of Rule 11 in giving an explanation of the strict pleading requirements in a case of this kind:
Long before the filing of the pleading quoted above, it had been laid down as the law of our Circuit that in "cases invoking 42 U.S.C. § 1093 we consistently require the claimant to state specific facts, not merely conclusory allegations." Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir.1985), and see authorities from this and other circuits cited at note 20. Cases such as Elliott, where the immunity to suit of governmental officials is at stake, present a special and acute subset of the general run. In view of the enormous expense involved today in litigation, however, of the heavy cost of responding to even a baseless legal action, and of Rule 11's new language requiring reasonable inquiry into the facts of the case by an attorney before he brings an action, applying the stated rule to all § 1983 actions has much to recommend it. There can be scant imposition, after all, in requiring a pleader who has already inquired into the facts of his case to replead his understanding of them, as our authorities cited have often suggested....

Order
For the reasons given above, the court is ordering that all claims of all plaintiffs against any defendant are dismissed. A separate judgment of dismissal, finally disposing of this action, is being signed contemporaneously with the signing of this memorandum opinion and order.
NOTES
[1] 42 U.S.C. § 1983.
[2] There is a question as to the authority of plaintiffs to add the new parties and causes of action, but, in view of the grant of dismissals, the court does not need to resolve that matter.
[3] City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
[4] Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).