**Charlene LEATHERMAN, et al., Plaintiffs–Appellants,**

v.

**TARRANT COUNTY NARCOTICS INTELLIGENCE AND COORDINATION UNIT, et al., Defendants–Appellees.**

**No. 91–1215.**

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1992.

---

Richard Gladden, Don Gladden, Fort Worth, Tex., for plaintiffs-appellants.

Van Thompson, Jr., Dist. Atty., Fort Worth, Tex., for Tarrant County, et al.

Wayne K. Olson, Rex McEntire, Fort Worth, Tex., for City of Lake Worth, Tex.

Kevin Keith, Dallas, Tex., for City of Grapevine, Tex.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

After police shot and killed their two dogs during the execution of a search warrant, plaintiffs brought this section 1983 action against the municipal defendants employing the police officers involved. They alleged that the municipalities had failed to adequately train their officers, and that such failure amounted to a municipal policy. The district court, 755 F.Supp. 726 (N.D.Tex.1991), dismissed the complaint because it did not satisfy this circuit's "heightened pleading requirement." Under the heightened pleading standard, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained," *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985), and, in cases like this one, facts that support the requisite allegation that the municipality engaged in a policy or custom for which it can be held responsible. *Palmer v. City of San Antonio*, 810 F.2d 514, 517 (5th Cir.1987). Because plaintiffs complaint does not satisfy the heightened pleading requirement, we affirm.

### Dog Day Afternoon

This civil rights case arose out of two separate incidents involving the execution of search warrants by law enforcement officers with the Tarrant County Narcotics Intelligence and Coordination Unit. One incident involved Charlene Leatherman, her son Travis, and her two dogs, Shakespeare and Ninja. Ms. Leatherman and Travis were driving in Fort Worth when they were suddenly stopped by police cars. Police officers surrounded the two of them, shouting instructions and threatening to shoot them. The officers informed Ms. Leatherman that other law enforcement officers were in the process of searching her residence. The officers also informed her that the search team had shot and killed their two dogs. Ms. Leatherman and Travis returned to their home to find Shakespeare lying dead some twenty-five feet from the front door. He had been shot three times, once in the stomach, once in the leg, and once in the head. Ninja was lying in a pool of blood on the bed in the master bedroom. He had been shot in the head at close range, evidently with a shotgun, and brain matter was splattered

across the bed, against the wall, and on the floor around the bed. The officers found nothing in the home relevant to their investigation. Rather than departing with dispatch, they proceeded to lounge on the front lawn of the Leatherman home for over an hour, drinking, smoking, talking, and laughing, apparently celebrating their seemingly unbridled power.

The other incident alleged in plaintiffs' amended complaint involved a police raid of the home of Gerald Andert pursuant to a search warrant. The warrant was issued on the basis that police officers had smelled odors associated with the manufacture of amphetamines emanating from the Andert home. At the time of the raid, Andert, a sixty-four year old grandfather, was at home with his family mourning the death of his wife; she had died after a three year battle with cancer. Without knocking or identifying themselves, the officers burst into the home and, without provocation, began beating Andert. First, an unidentified officer knocked him backwards. When Andert turned, he was greeted by two swift blows to the head inflicted by a club, presumably of the billy-style. His head wound would require eleven stitches. Other officers, in the meantime, shouted obscenities at the family members, who were still unaware of the intruders' identities. At gun point, the officers forced the family members to lie face down on the floor. The officers did not relent: they continued to insult the residents and threatened to harm them. After searching the

residence for one and one-half hours and finding nothing in the residence related to narcotics activity, the officers finally left.

Plaintiffs sued the Tarrant County Narcotics Intelligence and Coordination Unit ("TCNICU"), Tim Curry (in his official capacity as director of that unit), Tarrant County, Don Carpenter (sheriff of Tarrant County), the City of Lake Worth, Texas, and the City of Grapevine, Texas, in connection with these two incidents. Their amended complaint [1] alleged generally that the municipalities failed to formulate and implement an adequate policy to train its officers on the proper manner to execute search warrants and respond when confronted by family dogs. The allegations were of the "boilerplate" variety, alleging no underlying facts other than the events described above to support the assertions that the municipalities had adopted policies, customs, and practices condoning the conduct of the officers involved.[2] The complaint did not name any of the officers in their individual capacities as defendants.[3]

TCNICU, Tim Curry, and Don Carpenter moved the district court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to enter summary judgment in their favor pursuant to Fed. R.Civ.P. 56. They argued first that the complaint did not adequately allege facts under this circuit's heightened pleading standard establishing that the municipality adopted a policy or custom countenancing

---

1. Plaintiffs' original complaint only referenced the incident involving the Leathermans and their two dogs. Plaintiffs amended their complaint to include the Andert incident and add the City of Grapevine and City of Lake Worth as defendants.

2. The amended complaint did allege that one of the officers, in response to Ms. Leatherman's inquiry as to why the officers had shot the dogs, responded that it was "standard procedure." At most, that admission by the officer establishes that the municipalities had adopted a standard procedure for neutralizing dogs encountered during the execution of a search warrant. It does not establish that the municipalities had a policy of killing all dogs during a search, or that the municipalities failed to adequately train officers in appropriately responding to animals encountered during a search. In other words, the

admission only suggests the existence of a municipal policy; it does not convey the policy's content. We also note that the allegation concerning the admission was not substantiated in Ms. Leatherman's affidavit tendered in opposition to defendants' motion.

3. The complaint also alleged that the municipalities engaged in a custom and practice of preparing and causing the issuance of search warrants for residences based solely on the detection of odors associated with illegal drug manufacturing. The district court held that such a practice does not amount to a constitutional violation. *See Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948); *United States v. McKeever,* 906 F.2d 129, 132 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991).

the police conduct or that its failure to train amounted to deliberate indifference to the rights of the plaintiffs. Alternatively, the movants sought summary judgment, arguing that the evidence would fall short of establishing the necessary elements of municipal liability.

The district court granted the motion and dismissed all of plaintiffs' claims against all of the defendants, movants and nonmovants alike. The district court held that the complaint did not satisfy the heightened pleading standard, and that in any event, the evidence in the record demonstrated that all defendants were entitled to summary judgment as a matter of law. On appeal, plaintiffs urge this court to abandon the heightened pleading requirement, apparently conceding that their complaint does not satisfy that standard. Putting aside any pleading deficiencies, they also challenge the propriety of summary judgment. Finally, they contend that the district court's *sua sponte* dismissal of their claims against the nonmovants, defendants City of Grapevine and City of Lake Worth, was premature because the district court did not provide them with notice that it was contemplating dismissing their claims against those nonmoving defendants.

### All Bark, No Bite

In *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985), this circuit adopted the heightened pleading requirement for cases against state actors in their individual capacities. Reasoning that the doctrine of immunity should accord the defendant-official not only immunity from liability, but also immunity from defending against the lawsuit, *id.* at 1477–78 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816–17, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)), the *Elliott* court held that:

> In cases against government officials involving the likely defense of qualified immunity we require of trial judges that they demand that the plaintiff's complaint state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-offi-

cial cannot successfully maintain the defense of immunity.

*Id.* at 1473.

Since *Elliott*, this circuit has, without fail, applied the heightened pleading requirement in cases in which the defendant-official can raise the immunity defense. *E.g., Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir.1986); *Geter v. Fortenberry*, 849 F.2d 1550, 1553–54 (5th Cir.1988); *Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir.1990); *Vinson v. Heckmann*, 940 F.2d 114, 116 (5th Cir.1991); *Husband v. Bryan*, 946 F.2d 27, 30 (5th Cir.1991). We have written that "pleadings, replete with ... conclusory statements, do not defeat the officers' qualified immunity defense." *Streetman*, 918 F.2d at 557. Other circuits have similarly applied the heightened pleading requirement. For a collection of cases, see Schwartz and Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees*, Vol. I, sec. 1.6 n. 106 (1991).

In *Palmer v. City of San Antonio*, 810 F.2d 514, 516–17 (5th Cir.1987), a panel of this court extended the heightened pleading requirement into the municipal liability context. The court assumed, *sub silentio*, that the heightened pleading requirement logically applied not only in cases against defendant-officials, but in all section 1983 cases, including cases brought against a municipality. The *Palmer* court did not explain why the heightened pleading requirement should be extended to defendant-municipalities, considering that municipalities cannot claim the immunity defense. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980) (rejecting "a construction of section 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violation"). A later panel of this court suggested that:

> [i]n view of the enormous expense involved today in litigation, ... the heavy cost of responding to even a baseless legal action, and of Rule 11's new language requiring reasonable inquiry into the facts of the case by an attorney *before* he brings an action, applying the

stated rule to all section 1983 actions has much to recommend it.

*Rodriguez v. Avita,* 871 F.2d 552, 554 (5th Cir.1989), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989).[4] Thus, under *Elliott* and *Palmer,* the heightened pleading requirement governs all section 1983 complaints brought in this circuit: If the complaint is all bark and no bite, a district court is constrained to dismiss it even before opening discovery.

■ With the heightened pleading requirement as our guide, we turn to the particulars of this case. Quite plainly, plaintiffs' complaint falls short of alleging the requisite facts to establish a policy of inadequate training. Where, as here, a lawsuit brought against a municipality is predicated on inadequate training of its police officers, *see generally City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989), this circuit has cautioned that "to make such a showing in such a case, there would have to be demonstrated 'at least a pattern of similar incidents in which the citizens were injured' ... [in order] to establish the official policy requisite to municipal liability under section 1983." *Rodriguez,* 871 F.2d at 554–55 (citing *Languirand v. Hayden,* 717 F.2d 220, 227 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984)); *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [*v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy...."). While plaintiffs' complaint sets forth the facts concerning the police misconduct in great detail, it fails to state any facts with respect to the adequacy (or inadequacy) of the police training.

■ Although we are troubled by the absence of notice preceding the district court's *sua sponte* dismissal of the claims against the nonmovants,[5] defendants City of Grapevine and City of Lake Worth, we nevertheless affirm the dismissal of those claims as well. Plaintiffs do not contend in this court that they are prepared to allege specific facts in an amended complaint so as to render it in compliance with our heightened pleading requirement. We conclude, therefore, that the district court's failure to notify plaintiffs of its intention to dismiss the claims against the nonmovants, in the context of this case, was harmless. *Cf. Powell v. United States,* 849 F.2d 1576, 1580–82 (5th Cir.1988) (applying harmless error test to the notice requirement under Federal Rule of Civil Procedure 56 [summary judgment]).[6]

The judgment of the district court is AFFIRMED.

GOLDBERG, Circuit Judge, concurring specially.

Plaintiffs make no bones about it. Nowhere do they contend that their complaint satisfies the heightened pleading requirement. Instead, they urge this panel to abandon the requirement in favor of the traditional notice pleading standard set forth in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). I write further to articulate and comment upon their position.

### *These Dogs Want Their Day*

Plaintiffs argue that the heightened pleading requirement finds no support in the Federal Rules of Civil Procedure or in

---

4. The *Rodriguez* court indicated that it had no need in that case to "go so far" as extending the heightened pleading requirement in the municipal liability context. *Id.* Apparently, the *Rodriguez* panel was unaware that the *Palmer* panel had already gone that far.

5. Plaintiffs did know that the court was evaluating the adequacy of their complaint, if not the entire complaint, at least that portion pertaining to the claims against the moving defendants.

6. The district court ruled, in the alternative, that summary judgment was appropriate and that no further discovery was necessary. Because we hold that the district court properly dismissed the complaints based on the insufficiency of the allegations, we need not reach the other issues raised.

Supreme Court precedent.[1] They direct our attention to a plethora of articles and essays by persuasive commentators who champion this view. *See, e.g.,* Schwartz and Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees,* Vol. I, sec. 1.6, at p. 20 (1991) ("[t]here are pragmatic and theoretical difficulties with the heightened pleading requirement"); Blaze, *Presumed Frivolous: Application of Stringent Pleading Requirements in Civil Rights Litigation,* 31 Wm. & Mary L.Rev. 935, 949 (1990) (arguing that the creation of the heightened pleading requirement has no "direct legal support"); Tobias, *Public Law Litigation and the Federal Rules of Civil Procedure,* 74 Cornell L.Rev. 270, 299 (1989) ("[f]ederal courts may lack the requisite authority to demand more stringent pleading" in civil rights cases); Kinports, *Qualified Immunity in Section 1983 Cases: The Unanswered Questions,* 23 Ga. L.Rev. 597, 657 n. 235 (1989) ("[i]t is not obvious that the courts have authority to impose [the heightened pleading] requirement"); Saalman, *Rule 11 in the Constitutional Case,* 63 Notre Dame L.Rev. 788, 808–09 (1988) ("neither the Federal Rules nor the holdings of the Supreme Court interpreting those Rules provide for such a disparity of treatment" between section 1983 cases and all other lawsuits); Wingate, *A Special Pleading Rule for Civil Rights Complaints: A Step Forward or a Step Back?,* 49 Mo.L.Rev. 677, 683 (1984) (arguing that there is no "direct authority for the [heightened pleading] rule"); Roberts, *Fact Pleading, Notice Pleading, and Standing,* 65 Cornell L.Rev. 390, 418 n. 175 (1980) (asserting that "[t]he Supreme Court has never approved such an exception to federal notice pleading").

Plaintiffs also observe that some circuits have declined to embrace the heightened pleading requirement. The Ninth Circuit, for example, has held that the heightened pleading requirement applies neither in the defendant-official context, *Bergquist v. County of Cochise,* 806 F.2d 1364, 1367 (9th Cir.1986), nor in the municipal liability arena. *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 624 (9th Cir.1988). That court has stated squarely that our decision in *Elliott v. Perez* "is not the law in this circuit," *Bergquist,* 806 F.2d at 1367, and that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officer's conduct conformed to official policy, custom, or practice.'" *Karim–Panahi,* 839 F.2d at 624 (quoting *Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986)). In *Branch v. Tunnell,* however, a later panel of the Ninth Circuit "adopt[ed] a heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action." 937 F.2d 1382, 1386 (9th Cir.1991).[2]

The Seventh Circuit has expressed skepticism of the heightened pleading requirement as well. Echoing the concerns voiced by our-Judge Higginbotham in his specially

---

**1.** At least one member of the Supreme Court, Justice Kennedy, has expressed approval of the heightened pleading requirement in the immunity context, though he believes that the plaintiff needs to make specific factual allegations only *after* the defendant has raised the qualified immunity defense.

> The heightened pleading standard is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and departs also from the normal standard for summary judgment under Rule 56. But avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine, and it is no answer to say that plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.

> Upon the assertion of a qualified immunity defense the plaintiff must put forward specific nonconclusory factual allegations ... or face dismissal.

*Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring).

**2.** The *Branch* court did not endeavor to reconcile its holding with the earlier Ninth Circuit decision in *Bergquist.* Indeed, the *Branch* court did not cite *Bergquist.* It relied primarily on the District of Columbia Circuit's decision in *Siegert v. Gilley,* 895 F.2d 797, 802 (D.C.Cir.1990), *affirmed on other grounds,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and Justice Kennedy's concurring opinion affirming the District of Columbia Circuit's decision. 111 S.Ct. at 1795 (Kennedy, J., concurring).

concurring opinion in *Elliott v. Perez*, 751 F.2d at 1482–83, the Seventh Circuit "deprecate[d] the expression 'heightened pleading requirement'" because, in the court's view, it appears to conflict with rules 8, 9(b), and 56 of the Federal Rules of Civil Procedure. Judge Easterbrook, writing for the court, explained:

> It is better, we think, to recognize that official immunity is an affirmative defense, which need be asserted only after a plaintiff gets past the (slight) hurdles established by Rules 8 and 9(b). A possibility that the defendants will claim immunity does not require the plaintiff to anticipate and plead around that defense. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants assert immunity by pleading it in the answer and moving for summary judgment [under Rule 56].

*Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992).

Plaintiffs also contend that even if the heightened pleading requirement makes sense in the context of cases like *Elliott v. Perez*, which involve the likely defense of immunity, the extension of the heightened pleading requirement to complaints against municipalities, as in this case, is unwarranted. The rationale underlying the heightened pleading requirement—providing defendant-officials with immunity from defending a lawsuit—carries no force in the municipality context because defendant-municipalities, unlike defendant-officials, cannot claim an immunity defense. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980). To the extent that the heightened pleading requirement is on tenuous soil when immunity is available, *Elliott v. Perez*, 751 F.2d at 1483 (Higginbotham, J., concurring), plaintiffs contend that even less reason exists to fashion an exception to the notice pleading requirement when the defendant enjoys no immunity at all. Municipalities, plaintiffs argue, should not be afforded the benefit of a heightened pleading requirement; like any other defendant in any other case, municipalities should defend an action if the complaint

satisfies the traditional, more lenient, notice pleading requirements set forth in *Conley v. Gibson.*

There is something to be said for this argument. The rationale given by the *Rodriguez* court for extending the heightened pleading requirement into the municipal liability arena—the expense of litigation and Rule 11's demand for reasonable inquiry into the facts before bringing an action—is not unique to the section 1983 domain. After all, every lawsuit, not just section 1983 cases, represents a potentially expensive proposition for the defendant, and Rule 11 governs every civil case, no matter what the subject matter of the suit. By adopting notice pleading and not fact pleading, Congress has struck the balance in favor of plaintiffs: "[N]otice pleading concepts rest on acceptance of the idea that one may sue now and discover later...." *Elliott v. Perez*, 751 F.2d at 1482–83 (Higginbotham, J., concurring). Unless this court—or Congress, rather—intends to abandon notice pleading altogether, it is difficult to justify singling out section 1983 municipality cases over *all* other cases for application of the heightened pleading requirement. This is especially true in light of the challenges encountered when attempting to establish municipal liability. Plaintiffs must affirmatively prove a policy of inadequate training, yet the heightened pleading requirement forecloses any discovery which might uncover the evidence supporting their general allegations. Of course, we might expect that the municipality would have exclusive access to the information necessary to prove a policy, such as statistics, internal policy manuals, confidential memoranda and the like. As one source observes, the heightened pleading requirement "places an unrealistic burden on civil rights claimants who might have legitimate claims against municipalities, yet are foreclosed by the specific fact-pleading rule from obtaining the necessary information from the municipality through discovery." Schwartz and Kirklin, *supra*, Vol. I, sec. 7.12, at p. 393.

### Let Sleeping Dogs Lie

The heightened pleading requirement has its proponents and its critics. Its applica-

tion to section 1983 suits has generated great debate, resulting in what appears to be a circuit split on the issue. Although I have taken the time to lay out the competing arguments and am impressed by the wealth of authority plaintiffs cite in support of their position, I agree that we, as a panel of this court, must politely decline their invitation to reexamine the wisdom of this circuit's heightened pleading requirement. Until such a time as the en banc court sees fit to reconsider *Elliott* or, more specifically, *Palmer*, and in the absence of an intervening Supreme Court decision undermining our settled precedent,[3] I find myself constrained to obey the command of the heightened pleading requirement.[4]

---

**3.** It appeared that the Supreme Court would resolve the dispute when it granted certiorari in *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), but the Court did not reach the question. *See id.* 111 S.Ct. at 1795 (Kennedy, J., concurring) (indicating that he would have preferred that the Court resolve the issue).

**4.** *See Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991) ("In this circuit one panel may not overrule the decision, right or wrong, of a prior panel, in the absence of en banc consideration or superseding decision of the Supreme Court.") (citations and quotations omitted).